UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RYSZARD SADOWSKI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 18 CV 5832 |
| v. ) | |
| ) | Judge Manish S. Shah |
| CITY OF CHICAGO, ) | |
| JOHN C. HENRY, ) | Magistrate Judge Maria Valdez |
| HERMAN SAINT-LOUIS, ) | |
| N. C. LIBOY, ) | |
| RICK V. WILDER, ) | |
| MATEUSZ JASINSKI, ) | |
| LARRY M. DEL DOTTO, ) | |
| ROMERO, ) | |
| REYMOND M. MALLARI, ) | |
| SUNIL ARORA, ) | |
| MARINA BEKIC, ) | |
| COMMUNITY FIRST HEALTHCARE OF ) | |
| ILLINOIS, INC., d/b/a ) | |
| COMMUNITY FIRST MEDICAL CENTER, ) | |
| FREIDA E. HUGUETH, ) | |
| RYAN LEAVITT, ) | |
| ) | |
| Defendants. ) | |

**THIRD AMENDED COMPLAINT**

1. This is an action for money damages brought pursuant to 42 U.S.C. § 1983 and the statutes and common law of the State of Illinois.

2. Jurisdiction for Plaintiff's federal claims is based on 28 U.S.C. §§ 1331 and 1343(a). Jurisdiction for Plaintiff's state claims is based on supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

1

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), in that the claims arose in this district as alleged below.

### Parties

4. Plaintiff Ryszard Sadowski is a resident of Chicago.

5. Defendant Officers John C. Henry, Star 7527, Herman Saint-Louis, Star 17424, N. C. Liboy, Star 13447, Rick V. Wilder, Star 19951, and Mateusz Jasinski, Star 5007, (hereinafter "Defendant-Officers") are duly appointed and sworn Chicago police officers.

6. Defendant Fire and/or Emergency Medical Personnel Field Chief Larry M. Dotto, Freida E. Hugueth, and Ryan Leavitt (hereinafter "Defendant-EMP") are duly appointed and sworn Chicago fire and/or emergency medical personnel.

7. EMS Coordinator Romero, Reymond M. Mallari, R.N., Sunil Arora, M.D., and Marina Bekic, D.O. (hereinafter "Medical Staff") are medical personnel and employees of Community First Medical Center.

8. At all times relevant to this Complaint, the Defendant-Officers were acting in the course and scope of their employment, and under color of state law, ordinance and/or regulation.

9. The Defendant-Officers are sued in their individual capacities.

10. At all times relevant to this Complaint, the Defendant-EMP were acting in the course and scope of their employment, and under color of state law, ordinance and/or regulation.

11. The Defendant-EMP are sued in their individual capacities.

12. Defendant City of Chicago is a municipal corporation, duly incorporated under the laws of the State of Illinois, and is the employer and principal of the Defendant-Officers and the Defendant-EMP.

13. At all times relevant to the Complaint, the Medical Staff were acting the course and scope of their employment or agency.

14. Community First Healthcare of Illinois, Inc., d/b/a Community First Medical Center (hereinafter "CFMC"), is a corporation registered and licensed to do business in Illinois, and is the employer and principal of the Medical Staff.

15. Alternatively, at all times relevant to the Complaint, the Medical Staff were apparent and/or authorized agents of CFMC, authorized to provide medical services on behalf of CFMC.

**Facts**

16. On August 28, 2016, at approximately 5:30 in the afternoon, Plaintiff was sitting in the driver's seat of his vehicle inside his garage on his private property at or near 2552 North Major Avenue in Chicago, Illinois.

17. The garage door was closed and Plaintiff was securely inside of his private property.

18. Some or all of the Defendant-Officers and/or Defendant-EMP arrived at Plaintiff's residence and entered Plaintiff's garage, his private property, without a warrant or other legal justification.

19. Some or all of the Defendant-Officers and Defendant-EMP arrived at Plaintiff's residence and they observed Plaintiff sitting in his vehicle inside his garage on his private property at or near 2552 North Major Avenue.

20. Some or all of the Defendant-Officers and Defendant-EMP proceeded to seize Plaintiff by ordering him into a Chicago Fire Department Ambulance.

21. Some or all of the Defendant-Officers and Defendant-EMP failed to intervene in the seizure of Plaintiff.

22. Plaintiff objected to going to the hospital, refused medical treatment, and objected to being forced into the ambulance.

23. Plaintiff's wife and daughter, who were present, also objected to Plaintiff going to the hospital, being forced into the ambulance and stated that Plaintiff refused medical treatment.

24. One of the Defendant-EMP, upon information and belief, Defendant Hugueth, physically pushed Plaintiff's wife when she objected to forcing Plaintiff to get in the ambulance

25. Over Plaintiff's objections and refusal of medical treatment, as well as the reiteration of the refusal by Plaintiff's wife and daughter, some or all of the Defendant-Officers and Defendant-EMP took, or failed to intervene in the taking of, Plaintiff to CFMC.

26. Upon arrival at CFMC, Plaintiff continued to refuse medical treatment and object to being in the hospital.

27. Plaintiff's wife and daughter also reiterated Plaintiff's objections and refusal of medical treatment.

28. Some or all of the Defendant-Officers and/or Defendant-EMP spoke to Plaintiff about drawing blood and obtaining a urine sample from Plaintiff.

29. Defendant Mallari spoke to Plaintiff about drawing his blood and obtaining a urine sample.

30. Defendant Romero was present while Mallari and Chicago police personnel spoke to Plaintiff about drawing his blood and obtaining a urine sample.

31. Plaintiff refused and objected to both the drawing of his blood and providing a urine sample.

32. Plaintiff's wife and daughter reiterated Plaintiff's objections and refusal.

33. Some or all of the Defendant-Officers threatened to catheterize Plaintiff if he did not give a urine sample.

34. Some or all of the Defendant-Officers and Defendant-EMP restrained Plaintiff in order to physically and forcibly draw his blood.

35. Defendant Mallari restrained Plaintiff in order to physically and forcibly draw his blood, while Romero watched and supervised.

36. While Plaintiff was in the hospital and was repeatedly being told, threatened, coerced and otherwise forced to give a urine and blood sample, over his explicit refusals, Defendants Mallari and Romero were present and observed these things happening.

37. Defendants Romero and Mallari indicated, at the time of these events, that they were aware that Plaintiff did not consent to giving a urine or blood sample.

38. When Plaintiff attempted to leave the hospital and refused medical treatment, Defendant Romero told Plaintiff he had to stay in the hospital.

39. While Plaintiff was in the hospital and was repeatedly being told, threatened, coerced and otherwise forced to give a urine and blood sample, over his explicit refusals, Defendants Arora and Bekic were present at times as they came in and out of the room where Plaintiff was being held.

40. In the face of these threats and physical restraints, Defendant Mallari drew Plaintiff's blood while Defendant Romero watched and supervised.

41. In the face of these threats and physical restraints, Plaintiff provided a urine sample that Defendant Mallari collected and that Defendant Romero observed and supervised.

42. Plaintiff's blood was drawn and a urine sample obtained without his consent and under duress, threat and coercion.

43. The Defendant-Officers did not obtain a warrant to obtain a blood or urine sample from Plaintiff.

44. To the extent that some of the Defendant-Officers and/or Defendant-EMP did not personally order, restrain, threaten, coerce or force Plaintiff to provide blood and urine, they failed to intervene in and/or supervised and approved their fellow officers' and personnel's actions.

45. To the extent that some of the Medical Staff did not personally restrain, threaten, coerce or force Plaintiff to provide blood and urine, they supervised, approved and/or permitted their co-workers' actions.

46. Specifically, Defendant Romero represented that he was the supervisor of the Emergency Room.

47. Defendant Romero was present during the entire course of events, and he observed, communicated and participated with City officers and personnel in refusing to let Plaintiff leave the hospital and obtaining blood and urine samples under threat, coercion, duress and force, without Plaintiff's consent and in the face of Plaintiff's explicit refusals and objections.

48. Defendant Mallari was present during the entire course of events, and he observed, communicated and participated with City officers and personnel in refusing to let Plaintiff leave the hospital and obtaining blood and urine samples under threat, coercion, duress and force, without Plaintiff's consent and in the face of Plaintiff's explicit refusals and objections.

49. Defendants Bekic and Arora were the attending doctors assigned to Plaintiff and were responsible for overseeing Plaintiff's treatment and had decision-making authority regarding Plaintiff's treatment.

50. Defendants Bekic and Arora were present in the hospital during the course of events and were in and out of Plaintiff's room. Defendants Bekic and Arora observed, communicated with and supervised Defendants Romero and Mallari's conduct, including refusing to let Plaintiff leave the hospital, and obtaining blood and urine samples under threat, coercion, duress and force, without Plaintiff's consent and in the face of Plaintiff's explicit refusals and objections.

51. Plaintiff was eventually released from CFMC without any further medical treatment based on his refusal of medical treatment.

52. As a direct and proximate result of the acts of the Defendants described above, Plaintiff suffered damages, including loss of physical liberty, invasion of his bodily integrity, and emotional distress.

## COUNT I
## 42 U.S.C. § 1983 – Unreasonable Seizure

53. Plaintiff realleges paragraphs 1 through 52 as if fully set forth herein.

54. Some or all of the Defendant-Officers and Defendant-EMP seized and forcibly took Plaintiff to the hospital despite his refusal of medical treatment.

55. Some or all of the Defendant-Officers and Defendant-EMP failed to intervene in the seizure and forcible taking of Plaintiff despite his refusal of medical treatment.

56. The Defendant-Officers and Defendant-EMP violated Plaintiff's Fourth Amendment right, as guaranteed by the Fourteenth Amendment, to be free from unreasonable seizure.

WHEREFORE, Plaintiff asks that this Honorable Court:

    a)    Enter judgment against Defendant-Officers and Defendant-EMP,

    b)    Award Plaintiff compensatory and punitive damages,

    c)    Award attorneys' fees and costs, and

    d)    Award any further relief that this Honorable Court deems just and equitable.

## COUNT II
### 42 U.S.C. § 1983 – Unreasonable Entry

57. Plaintiff realleges paragraphs 1 through 52 as if fully set forth herein.

58. Some or all of the Defendant-Officers and/or Defendant-EMP entered Plaintiff's private property, i.e. his garage, without Plaintiff's consent and without a warrant.

59. The Defendant-Officers and Defendant-EMP violated Plaintiff's Fourth Amendment right, as guaranteed by the Fourteenth Amendment, to be free from unreasonable search.

WHEREFORE, Plaintiff asks that this Honorable Court:

    a)    Enter judgment against Defendant-Officers and Defendant-EMP,

    b)    Award Plaintiff compensatory and punitive damages,

    c)    Award attorneys' fees and costs, and

    d)    Award any further relief that this Honorable Court deems just and equitable.

## COUNT III
### 42 U.S.C. § 1983 – Unreasonable Search

60. Plaintiff realleges paragraphs 1 through 52 as if fully set forth herein.

61. Some or all of the Defendant-Officers and/or Defendant-EMP obtained Plaintiff's blood and urine, by forcibly taking Plaintiff to the hospital, by directing the Medical Staff to do so, and by threatening and restraining Plaintiff, without Plaintiff's consent and without a warrant.

62. Some or all of the Defendant-Officers and/or Defendant-EMP failed to intervene in obtaining Plaintiff's blood and urine, by forcibly taking Plaintiff to the hospital, by directing the Medical Staff to do so, and by threatening and restraining Plaintiff, without Plaintiff's consent and without a warrant..

63. The Defendant-Officers and Defendant-EMP violated Plaintiff's Fourth Amendment right, as guaranteed by the Fourteenth Amendment, to be free from unreasonable search.

WHEREFORE, Plaintiff asks that this Honorable Court:

a) Enter judgment against Defendant-Officers and Defendant-EMP,

b) Award Plaintiff compensatory and punitive damages,

c) Award attorneys' fees and costs, and

d) Award any further relief that this Honorable Court deems just and equitable.

## COUNT IV
### Battery

64. Plaintiff realleges paragraphs 1 through 52 as if fully set forth herein.

65. Defendants Medical Staff made offensive or harmful contact with Plaintiff by restraining Plaintiff and drawing Plaintiff's blood.

66. Such offensive or harmful contact was made without Plaintiff's consent and over his objection and despite his refusal of medical treatment.

67. Such offensive or harmful contact caused Plaintiff to suffer damages.

WHEREFORE, Plaintiff asks that this Honorable Court:

a) Enter judgment against Defendants Medical Staff,

b) Award Plaintiff compensatory and punitive damages,

c) Award costs, and

    d)    Award any further relief that this Honorable Court deems just and equitable.

## COUNT V
## Assault

68. Plaintiff realleges paragraphs 1 through 52 as if fully set forth herein.

69. Defendants Medical Staff threatened offensive or harmful contact with Plaintiff by threatening to catheterize him to coerce him to give a urine sample and by restraining him in order to force him to give a blood sample.

70. These acts by Defendants Medical Staff caused Plaintiff to have a reasonable apprehension of an imminent, offensive contact.

71. These acts by Defendants Medical Staff caused Plaintiff to suffer damages.

WHEREFORE, Plaintiff asks that this Honorable Court:

    a)    Enter judgment against Defendants Medical Staff,

    b)    Award Plaintiff compensatory and punitive damages,

    c)    Award costs, and

    d)    Award any further relief that this Honorable Court deems just and equitable.

## COUNT VI
## Respondeat Superior

72. Plaintiff realleges paragraphs 1 through 71 as if fully set forth herein.

73. Defendants Medical Staff, were acting in the scope of their employment and/or as agents of Defendant CFMC.

74. Defendant CFMC is liable for the acts of its agents and employees, and is therefore liable for assault, battery and any other state law claim that arises out of the incident that is the subject of this Complaint.

WHEREFORE, Plaintiff asks that this Honorable Court:

a) Enter judgment against CFMC,

b) Award Plaintiff compensatory and punitive damages,

c) Award costs, and

d) Award any further relief that this Honorable Court deems just and equitable.

## COUNT VII
### Indemnification Claim pursuant to 745 ILCS 10/9-102

75. Plaintiff realleges paragraphs 1 through 63 as if fully set forth herein.

76. Pursuant to the Illinois Tort Immunity Act, 745 ILCS 10/9-102, Defendant City of Chicago is liable for any judgments for compensatory damages and attorneys' fees in this case arising from the Defendant-Officers' and Defendant-EMP's actions.

WHEREFORE, Plaintiff asks that this Honorable Court order Defendant City of Chicago to indemnify the Defendant-Officers and Defendant-EMPs for any judgment for compensatory damages and attorneys' fees in this case arising from their actions.

77. Jury trial demanded.

Respectfully submitted,

/s/ Amanda S. Yarusso
Counsel for Plaintiff

Amanda S. Yarusso
111 West Washington Street, Suite 1500
Chicago, Illinois 60602
(773) 510-6198

11